**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**AUTUMN HEALTH CARE OF**
**ZANESVILLE, INC,**                              **Case No. 2:14-cv-229**
                                                 **CHIEF JUDGE EDMUND A. SARGUS, JR.**
         **Plaintiff,**                          **Magistrate Judge Norah McCann King**

    v.

**CENTERS FOR MEDICARE AND**
**MEDICAID SERVICES, et al.,**
         **Defendants.**

### OPINION AND ORDER

This matter is before the Court on Defendants the Ohio Department of Health ("ODH")
and Dr. Theodore Wymyslo, M.D.'s (collectively "ODH Defendants") motion to dismiss (ECF
No. 4), and Defendant United States Department of Health and Human Services, Centers for
Medicare and Medicaid Services' ("CMS") motion to dismiss (ECF No. 14).  For the reasons
that follow, ODH and Dr. Wymyslo's motion is **GRANTED**, and CMS's motion is **GRANTED**
in accordance with this Opinion and Order.

### I. BACKGROUND

**A.  Factual Background**

Plaintiff Autumn Healthcare of Zanesville, Inc. ("Autumn") is an Ohio corporation with
its principal place of business in Zanesville, Ohio.  Autumn operated a skilled nursing facility
called Autumn Healthcare of Zanesville (the "Facility").

Defendant CMS is an agency of the United States that administers the Medicare Program
and works with the states to oversee the Medicaid Program.  Defendant Marilyn Tavenner is the
Administrator for CMS.  Defendant ODH is an Ohio agency that oversees the health of the
general public.  Defendant Dr. Wymyslo is the former Director of ODH.

ODH completed an annual recertification survey of the Facility on April 27, 2012. Consequently, Autumn was issued a statement of deficiencies, which included a citation for a level "G" deficiency.[1]  The level "G" citation indicated that the deficiencies were "isolated in scope but resulted in actual harm that [did] not constitute immediate jeopardy to resident health or safety." (ECF No. 1 at 3.)  The citation was issued as a result of purported harm to a resident of the Facility for pressure sore treatments.  ODH concurrently informed Autumn that, based on the citation and other sanctions, ODH would be recommending that CMS terminate the Facility's Medicare and Medicaid provider agreements.  The termination would be effective no later than June 27, 2012.

On May 24, 2012, "CMS proposed to terminate Autumn's Medicare provider agreement, prohibit further admissions at the Facility, and impose civil monetary penalties of $900 per day." (ECF No. 4 at 14.)  CMS subsequently postponed those actions by entering into a Systems Improvement Agreement ("SIA") with Autumn and ODH.   As part of the SIA, Autumn acknowledged a list of its deficiencies, including:

> 1) a longstanding history of noncompliance with federal Medicare and Medicaid standards, including seven deficiencies at a scope and severity level "F" or above identified in health surveys conducted at the [F]acility; 2) fourteen deficiencies, including one deficiency constituting actual harm; and 3) a failure to improve operations.

(*Id*. at 14) (citing SIA at 1.)  Autumn was able to avoid termination of its Medicare provider agreement by improving the quality of care at its facility.  Under the SIA, Autumn agreed that CMS could immediately terminate the provider agreements if a survey indicated that the Facility had a deficiency of "F" or more during the term of the Agreement.

---

[1] According to CMS, "[n]ursing home deficiencies are assigned a 'scope and severity' rating.  Severity involves the potential for harm.  Scope involves the number of residents who could be affected."  (ECF No. 4 at 14, n.4) (internal citations omitted).

2

Autumn further agreed that it would not "file any suit or action in any administrative tribunal or court against CMS or ODH as a result of any action or inaction taken by CMS or the State Survey Agency in connection with or under this Agreement." (*See* ECF No. 1 at 18, SIA § (D)(3).) Autumn consented that, if it disagreed with any termination action occurring during the relevant period, it could request an informal review by CMS that would constitute the "full and complete basis for the resolution of this matter." (*Id.*)

On June 3, 2013, CMS completed a survey, the results of which indicated that Autumn was not in substantial compliance with various program requirements. The survey found two "G" level deficiencies for accident prevention and nutritional status, and "F" level deficiencies for food safety and infection control. On June 14, 2013, CMS informed Autumn that, pursuant to its findings, CMS would terminate Autumn's Medicare and Medicaid provider agreements on August 2, 2013.

Autumn directly challenged CMS' decision in two ways. First, it filed a motion for a temporary restraining order before this Court, seeking an injunction that would prohibit the termination of its Medicare and Medicaid provider agreements and invalidate the SIA. *See Autumn Health Care of Zanesville, Inc. v. U.S. Dept. of Health and Human Services*, 959 F. Supp. 2d 1044 (S.D. Ohio 2013). This Court denied Autumn's motion, and dismissed the case due to lack of subject matter jurisdiction.

Next, Autumn requested an administrative hearing to challenge the termination of its Medicare and Medicaid provider agreements. During the hearing, Autumn asserted that the SIA "it willingly entered into is nevertheless unenforceable…because it compels the facility to waive its constitutionally-protected rights to administrative and judicial review in order to participate in the Medicare and Medicaid programs." (ECF No. 4-1 at 4.) The ALJ found that Autumn

"knowingly and voluntarily agreed to waive its appeal rights and realized the benefits of the waiver," thereby foregoing the right to a hearing before the ALJ. (*Id.* at 6.) The hearing request was, accordingly, dismissed.

Autumn has since filed several lawsuits against individual ODH surveyors and various state officials. (*See* ECF No. 4 at 17; ECF No. 14 at 8-9.) Defendants assert that this action marks Plaintiff's thirteenth legal action related to the June 3, 2013 survey and subsequent termination of the Facility's Medicare and Medicaid provider agreements.

### B. Procedural Background

On March 3, 2014, Autumn filed its complaint against CMS, Marilyn Tavenner, ODH, and Dr. Wymyslo, asserting one claim for declaratory judgment and one claim for rescission. (ECF 1.)[2] On May 2, 2014, Defendants ODH and Dr. Wymyslo filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 4.) Similarly, on July 25, 2014, Defendant CMS filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) The motions have been fully briefed and are ripe for this Court's review.

### II. STANDARD OF REVIEW

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). "Where subject

---

[2] Plaintiff filed another complaint on June 6, 2014. (ECF No. 8.) As the Magistrate Judge stated in her preliminary pretrial order, "Document No. 8, captioned "*Complaint*," was filed in connection with service of process on the federal defendants and is not intended by plaintiff as an amendment to the original *Complaint*, ECF 1." (ECF No. 13 at 2.) Thus, the Court need only refer to the initially filed complaint (ECF No. 1), as the second complaint (ECF No. 8) is identical.

matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). To meet that burden, the plaintiff must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.' " *Musson Theatrical, Inc. v. Fed'l Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff will survive the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. *Id.* In conducting its review, a court must "construe the complaint in a light most favorable to the plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether the plaintiff can prove no set of facts supporting [the] claims that would entitle him to relief." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court, however, need not accept as true legal conclusions or unwarranted factual inferences.

5

*Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

### III. ANALYSIS

*A. Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)*

As an initial matter, the Court must address the Parties' differing explanations regarding the controlling legal framework.

Defendants assert that Plaintiff's case must be dismissed based on lack of subject matter jurisdiction because Plaintiff has failed to exhaust its administrative remedies as required by 42 U.S.C. § 405(g) and 42 U.S.C. § 405(h). Defendants claim that neither the Administrative Procedures Act, 5 U.S.C. § 702, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, provide subject matter jurisdiction. Defendant CMS also argues that jurisdiction under 28 U.S.C. § 1331 is specifically barred. Defendant ODH focuses the bulk of its 12(b)(1) argument on Plaintiff's failure to present properly its claims in front of an administrative tribunal.

Plaintiff, however, insists that Defendants' interpretation of the case is misguided. Plaintiff argues that its complaint is not asking this Court to reverse the termination decision or reinstate Plaintiff's Medicare and Medicaid eligibility. Rather, Plaintiff is seeking a rescission of the SIA based on Defendants' purported material breaches, repudiation of the agreement, and Defendants' alleged lack of good faith.

a. Claims "Arising Under" the Medicare and Medicaid Act

"Under 42 U.S.C. § 1395cc(h)(1), an institution 'dissatisfied with a determination by the Secretary . . . described in subsection (b)(2) of this section shall be entitled to a hearing thereon

6

by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.'"  *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354 at 358 (6th Cir. 2000).  The referenced subsection (b)(2) sets forth the Secretary's power to terminate an agreement with a provider of services to participate in the Medicare program, including situations in which "the provider fails to comply substantially with the provisions of the agreement, [or] with the provisions of [the Medicare Act] and regulations thereunder."  *Id.* (quoting 42 U.S.C. § 1395cc(b)(2)(A)).  The Secretary's findings and decision to terminate participation in the Medicare program thus are subject to judicial review under § 405(g), which states:

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.

42 U.S.C. § 405(g).

"Under 42 U.S.C. § 1395ii, the Medicare Act incorporates 42 U.S.C. § 405(h), which provides that the Secretary's findings and final decision after a hearing are binding on the parties to the hearing." *Cathedral Rock*, 223 F.3d at 358.  "This provision also limits judicial review as follows: 'no findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided' and no action against the Secretary 'shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under' the Medicare Act." *Id.* (quoting 42 U.S.C. § 405(h)).  "This section 'channels most, if not all, Medicare claims through [the] special review system' of an administrative hearing and 'purports to make exclusive the judicial review method set forth in § 405(g).'" *Id.* at 358–59 (citing *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000); *Michigan Ass'n of*

7

*Homes & Servs. for the Aging, Inc. v. Shalala*, 127 F.3d 496, 499 (6th Cir. 1997); *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 721 (6th Cir. 1991)).

The Sixth Circuit has "held that in order to obtain judicial review under § 405(g), a party must comply with '(1) a nonwaivable requirement of presentation of any claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive.'" *Id.* (quoting *Michigan Ass'n of Homes & Servs.*, 127 F.3d at 499, which relied on *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)). "As so interpreted, the bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'" where exceptions may apply and instead "demands the 'channeling' of virtually all legal attacks through the agency." *Id.* This system "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts," although "this assurance comes at a price, namely, occasional individual, delay-related hardship." *Id.* (quoting *Illinois Council*, 120 S. Ct. at 1093.) The *Illinois Council* Court "concluded, however, that 'in the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations . . . paying this price may seem justified.'" *Id.* at 359.

"Based on this interpretation of § 405(h), virtually all legal challenges to an administrative determination must be channeled through the Secretary's administrative process before judicial review is available as set forth in § 405(g), and any claimed exceptions to this requirement of exhaustion of administrative remedies must be examined critically." *Id.* The Northern District of Ohio recently explained the reach of the § 405(h):

> Section 405(h), made applicable to the Medicare Act by 43 U.S.C. § 1395ii, provides that any claim "arising under" the Medicare Act must be brought exclusively under 42 U.S.C. § 405(g). *See* 42 U.S.C. § 405(h); *Heckler v. Ringer,* 466 U.S. 602, 614–15 (1984)

8

> (stating that section 405(h) provides that section 405(g) is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act).... The United States Supreme Court seems to have adopted two alternative tests for determining whether a claim "arises under" the Medicare Act. First, a claim "arises under" the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Act. *Ringer,* 466 U.S. at 615 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 760–61 (1975)). Second, a claim "arises under" the Medicare Act if it is "inextricably intertwined" with a claim for Medicare benefits. *Ringer,* 422 U.S. at 614.

*Ohio State Chiropractic Association v. Humana Health Plan, Inc.*, Case. No. 5:14-cv-2313, 2015 WL 350391, at *2 (N.D. Ohio Jan. 26, 2015).

The basis of the Parties' disagreement concerns whether Plaintiff's complaint "arises under" the Medicare Act.  Here, Defendants contend that Autumn must present its arguments to the Secretary in an administrative hearing and exhaust its administrative remedies before it can bring its claims before this Court.  Though "Autumn started the administrative process, it later abandoned [it] by choosing not to appeal the ALJ's ruling dismissing its hearing request," which CMS contends is the "opposite of [exhaustion]."  (ECF No. 14 at 24) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)).  The Defendants insist that "[n]early all of the factual allegations in the Complaint relate to Autumn's non-compliance with Medicare/Medicaid regulations and Autumn's termination from the Medicare and Medicaid programs."  (ECF No. 10 at 3) (*see also* ECF No. 14 at 26-29.)

The ODH Defendants further assert that Plaintiff's statements in its response contradict what is set forth in its complaint.  The complaint asks that this Court "rescind 'all actions taken by Defendants pursuant to the Agreement.'"  (ECF No. 10 at 5) (quoting ECF No. 1 at ¶ 48.) The ODH Defendants claim that "Autumn has never identified what other 'actions taken by the Defendants' it seeks to vacate, if not penalties due to violations of Medicare/Medicaid

standards." (*Id.*)  CMS similarly contends that "Autumn asks for 'rescission of…all actions taken by Defendants pursuant to the Agreement.'  Unquestionably, that relief includes the termination.  Indeed, what other actions could there be?"  (ECF No. 14 at 27) (quoting ECF No. 1 at ¶ B.)  Defendants, thus, maintain that Plaintiff's complaint falls under the Medicare/Medicaid regulations, and must meet the requirements of § 405(h) before this Court can exercise properly subject matter jurisdiction.

Plaintiff counters that it is seeking a finding of breach of contract; specifically, that Defendants breached the SIA "by entering into an undisclosed quid pro quo agreement with the Ohio Attorney General's office and agreeing in advance to cite Plaintiff's facility for serious deficiencies."  (ECF No. 7 at 7.)  Though, according to Plaintiff, Defendants insist that the SIA is a sanction that falls within § 405(g), Plaintiff argues that the SIA is merely an agreement between the parties entered into for the purpose of *avoiding* sanctions.  Plaintiff contends that challenging the enforceability of the SIA and Defendants' good faith in performing does not equate to a challenge of the sanctions eventually imposed against Plaintiff.  Thus, Plaintiff maintains that the arguments set forth in the complaint are simply "collateral to CMS' substantive determination to terminate Plaintiff's provider contracts and would have no effect on the current status of Plaintiff's Medicare/Medicaid provider contracts."  (*Id.*)

"[A] claim 'arises under' the Medicare Act if it is "inextricably intertwined" with a claim for Medicare benefits."  *Ohio State Chiropractic*, 2015 WL 350391, at *2 (internal citation omitted).  In *Cathedral Rock*, the Court discussed a situation in which a claim was considered to be an inextricably intertwined challenge:

> we have concluded that where an ambulance provider makes the legal argument that the Secretary violated the Medicare regulations and the Due Process Clause in determining that certain vehicles do not qualify as ambulances for the purpose of Medicare

10

> reimbursement, this challenge is "inextricably intertwined" with the party's claim that it is entitled to benefits for its ambulance service….Such a claim is "inextricably intertwined" because if the ambulance provider were successful in reversing the Secretary's determination, then it would be entitled to increased benefits for its vehicles.

*Cathedral Rock*, 223 F.3d at 363 (citing *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71

F.3d 574, 579 (6th Cir. 1995) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)).

   This Court finds that the arguments set forth in Plaintiff's complaint fall under §§ 405(g)

and 405(h), and the complaint, thereby, "aris[es] under" the Medicare Act.  *See Ohio State*

*Chiropractic*, 2015 WL 350391, at *2.  Plaintiff's argument is inextricably intertwined in the

termination of its Medicare and Medicaid benefits, as well as in Autumn's compliance with the

relevant standards and the resulting penalties.  As such, this Court finds that Plaintiff's complaint

arises under §§ 405(g) and §§ 405(h), and Plaintiff must meet the requirements of those statutes

to establish properly subject matter jurisdiction.

   b.   <u>Subject Matter Jurisdiction and 42 U.S.C § 405(g) and 42 U.S.C. § 405(h)</u>

   Having determined that Plaintiff must satisfy the requirements of §§ 405(g) and 405(h),

the Court next considers whether Plaintiff has done so, thereby articulating this Court's subject

matter jurisdiction.  As set forth above, the Sixth Circuit has "held that in order to obtain judicial

review under § 405(g), a party must comply with '(1) a nonwaivable requirement of presentation

of any claim to the Secretary, and (2) a requirement of exhaustion of administrative review,

which the Secretary may waive.'"  *Cathedral Rock*, 223 F.3d at 358-59 (internal citations

omitted).  Insofar as Defendants insist that Plaintiff has not met the requirements under §§ 405(g)

and 405(h), this Court agrees.

   Plaintiff maintains its stance that the Defendants' discussion of §§ 405(g) and 405(h) "is

wholly irrelevant to this Court's jurisdiction."  (ECF No. 7 at 4; ECF No. 15 at 5.)  Rather than

11

argue that it has met the statute's requirements, Plaintiff focuses its attention on explaining why Defendants' positions are misplaced.  Plaintiff argues that it need only demonstrate that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702 (the Administrative Procedures Act), and 28 U.S.C. § 1367.  However, as this Court has made clear, Plaintiff is required to assert how it has fulfilled the requirements of §§ 405(g) and 405(h). Because Plaintiff neglects to do so, it concedes that argument, in turn failing to establish subject matter jurisdiction.

## IV. CONCLUSION

For the reasons stated above, ODH and Dr. Wymyslo's motion is **GRANTED**, and CMS's motion is **GRANTED**.

**IT IS SO ORDERED.**


_3-10-2015_
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES CHIEF DISTRICT JUDGE**